UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**WALTER WARD,**

       **Plaintiff,**           **CIVIL ACTION NO. 15-cv-11902**

      **v.**                          **DISTRICT JUDGE THOMAS L. LUDINGTON**

**CORIZON HEALTH, INC, et al.,**    **MAGISTRATE JUDGE MONA K. MAJZOUB**

       **Defendants.**
_____/

## REPORT AND RECOMMENDATION

      Plaintiff Walter Ward filed this *pro se* civil rights action on May 21, 2015, pursuant to 42 U.S.C. § 1983, alleging that Defendants Corizon Health, Inc. (Corizon), Officer Ladd, Jodi Nakata, Kelly VanSteenkiste, Kim Rupe, Laura Kinder, Willie Riley, and Unknown Defendants 1-10 violated his rights as secured by the Eighth Amendment to the United States Constitution. (Docket no. 1.) This matter comes before the Court on Michigan Department of Corrections (MDOC) Defendants Jodi Nakata, Kelly VanSteenkiste, Kim Rupe, and Laura Kinder's Motion for Summary Judgment (docket no. 29) and Defendant Corizon's Motion for Judgment on the Pleadings (docket no. 30). Plaintiff responded to the MDOC Defendants' Motion for Summary Judgment. (Docket no. 33.) This action has been referred to the undersigned for all pretrial purposes. (Docket no. 15.) The Court dispenses with oral argument on the motion pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I. RECOMMENDATION**

For the reasons that follow, it is recommended that (1) MDOC Defendants Jodi Nakata, Kelly VanSteenkiste, Kim Rupe, and Laura Kinder's Motion for Summary Judgment (docket no. 29) be **GRANTED**; (2) Defendant Corizon's Motion for Judgment on the Pleadings (docket no. 30) be **GRANTED**; (3) Defendant Ladd be dismissed from this action pursuant to Federal Rule of Civil Procedure 25(a); (4) Defendant Riley be dismissed from this action pursuant to 28 U.S.C. § 1915; and (5) Unknown Defendants 1-10 be dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m). Accordingly, it is recommended that this matter be dismissed in its entirety.

**II. REPORT**

**A. Background**

Plaintiff is currently on parole; however, the events giving rise to the Complaint allegedly occurred while he was incarcerated at the Cooper Street Correctional Facility in Jackson, Michigan. Plaintiff alleges that on August 31, 2013 at approximately 8:30 p.m., he was sitting at a picnic table playing dominoes when he suddenly passed out, fell backwards, and hit his head on the ground. (Docket no. 1 at 7.) He asserts that after he regained consciousness, he told Defendant Officer Ladd what had happened and asked Defendant Ladd to call healthcare on his behalf. According to Plaintiff, Defendant Ladd told him that no one was available in healthcare at that hour, and he instructed Plaintiff to lie down and ask a corrections officer to call healthcare for him in the morning.

Plaintiff alleges that he was still experiencing symptoms from the previous night's incident the next morning, so he asked a corrections officer to contact healthcare on his behalf. (*Id.* at 8.) Plaintiff asserts that after completing the call, the corrections officer informed him of

healthcare's instructions to submit a Health Care Request. Plaintiff then submitted a Health Care Request that same morning, in which he described his problems/symptoms as follows:

> On 8-31-13 while on the yard I suddenly blacked out unconscious and when I came to I didn't know where I was or what happened. I went to my unit officer who told me there was no health service staff and to wait til [sic] morning. This morning I told unit officer who called H/S who said if I feel sick send in a Health Service Request.

(*Id*. at 8, 38.) Defendant Nakata, a registered nurse, responded to Plaintiff's Health Care Request on September 3, 2013:

> Put lock on kite. There is nothing we can do for a seizure after it happened. You did not sustain any injuries. Please re-kite with symptoms.

(*Id*.)

Plaintiff then filed a grievance against healthcare and Defendant Nakata on September 3, 2013, alleging that Defendant Nakata's response to his Health Care Request constituted a denial of medical attention and deliberate indifference in violation of his Eighth Amendment rights. (*Id*. at 8, 24-26.) Plaintiff alleges that on September 9, 2013, he had an appointment with healthcare, during which his blood pressure and temperature were taken, and he was asked a few questions about his medical history and current medications. (*Id*. at 9.) Next, Plaintiff alleges that he met with Defendant VanSteenkiste on September 19, 2013 regarding his Step I grievance. Plaintiff asserts that he explained the events surrounding his grievance in detail, to which Defendant VanSteenkiste responded that the medical staff and corrections staff are aware of the procedure to follow when someone passes out, and they did not follow it. Plaintiff avers that Defendant VanSteenkiste also told him that Defendant Nakata's response to his Health Care Request was not proper and that she was going to inform Defendant Riley of the situation and have him meet with the staff involved. Plaintiff claims that he also told Defendant VanSteenkiste that his September 9, 2013 medical appointment did not address his neurological

3

problem, to which Defendant VanSteenkiste responded that she would schedule a medical appointment for Plaintiff regarding his neurological problem for the next week. (*Id*. at 9-10.) Plaintiff claims that he has yet to receive such an appointment. (*Id*. at 10.)

Plaintiff alleges that he received the response to his Step I grievance on October 6, 2013. (*Id*. at 10.) In the response, Defendant VanSteenkiste summarized the resolution of the issue as follows:

> Encourage to use the healthcare request forms for any current healthcare concerns or complaints. Informed grievant that there seems to have been miscommunication on healthcare and custody staffs end. Will discuss the issue with custody staff on the importance of calling the on call service provider should this incident occur again in the future. Nursing staff was instructed to see and evaluate inmate right away if they complain of dizziness, passing out, blurred vision, etc….. Grievance is resolved.

(*Id*. at 27.) Defendant Rupe reviewed and signed the Step I response. Plaintiff appealed the response to his grievance through Step III of the grievance process. (*Id*. at 10-12, 28-37.) The records attached to Plaintiff's Complaint indicate that Defendant Kinder denied Plaintiff's grievance appeal at Step II of the process. (*Id*. at 28, 33, 37.)

Plaintiff also alleges that on December 7, 2013, he started sneezing, which resulted in dizziness and a loss of hearing. (*Id*. at 11.) He asserts that later that day, he blew his nose and lost his balance. Plaintiff avers that he submitted a Health Care Request regarding these issues on December 8, 2013, to which Defendant Nakata responded on December 9, 2013, and indicated that an appointment with a nurse had been scheduled for Plaintiff for December 10, 2013. (*Id*. at 11, 39.) According to Plaintiff, on December 10, 2013, he met with a male nurse, who told Plaintiff to keep taking his medicine and to run warm water in his ears while showering to help clear his congestion. (*Id*. at 11-12.) Plaintiff claims, however, that the nurse never checked his ears, nose, or throat for congestion. (*Id*. at 12.)

Plaintiff claims that Defendants were deliberately indifferent to his medical, health, and safety needs in violation of his Eighth Amendment rights.  (*Id*. at 13-18.)  He also claims that Unknown Defendants 1-10 and Defendants Nakata, Rupe, Vansteenkiste, Kinder, and Corizon failed to provide adequate or any medical care to Plaintiff "following their knowledge of the need for Plaintiff to be seen diagnosed, evaluated, and to receive proper medical care."  (*Id*. at 18-21.)

### B. Governing Law

#### 1. *Summary Judgment Standard*

MDOC Defendants Nakata, VanSteenkiste, Rupe, and Kinder move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Docket no. 29.)  Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

2. *Judgment on the Pleadings Standard*

Defendant Corizon moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Docket no. 30.) Rule 12(c) states that a party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. "Motions seeking judgment on the pleadings, brought pursuant to Federal Rule of Civil Procedure 12(c), are reviewed under the same standard applied to motions to dismiss brought pursuant to Rule 12(b)(6)." *Estate of Malloy v. PNC Bank*, No. 11–12922, 2012 WL 1094344, at *4 (E.D. Mich. Apr. 2, 2012) (citation omitted).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

6

level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) assume the veracity of the remaining allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Id.*

**C. Analysis**

*1. MDOC Defendants' Motion for Summary Judgment*

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendants Nakata, VanSteenkiste, Rupe, and Kinder were persons acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether they deprived Plaintiff of a constitutional right.

7

Plaintiff asserts a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).

To support a claim of deliberate indifference under the Eighth Amendment, a Plaintiff must satisfy two components: an objective component, and a subjective component. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant . . . acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

To satisfy the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that

8

is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted). The MDOC Defendants argue that even assuming for purposes of the instant motion that Plaintiff's medical needs were sufficiently serious to satisfy the objective component of a deliberate indifference claim, Plaintiff has failed to satisfy the subjective component. (Docket no. 29 at 13.) In light of this argument, the Court will concentrate its attention on the subjective component.

To satisfy the subjective component of a deliberate indifference claim and show that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "'the official knows of and disregards' the substantial risk of serious harm." *Villegas*, 709 F.3d at 569 (quoting *Harrison*, 539 F.3d at 518). The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835). Instead, a plaintiff must show that (1) the defendant "subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the defendant "did in fact draw that inference," and (3) the defendant "then disregarded that risk." *Quigley*, 707 F.3d at 681 (citations omitted).

         a.        <u>Defendant Nakata</u>

Plaintiff alleges that Defendant Jodi Nakata, RN, exercised deliberate indifference to Plaintiff's health and safety and violated his Eighth Amendment rights when she responded to his Health Care Request by stating, "There is nothing we can do for a seizure after it happened. You did not sustain any injuries. Please re-kite with symptoms." (Docket no. 1 at 14, 38.) Specifically, Plaintiff alleges that Defendant Nakata's response constituted a diagnosis of Plaintiff's medical problems without a personal evaluation and a denial of Plaintiff's right to be

seen for an existing medical condition that required medical care. (*Id*. at 14.) Plaintiff also alleges that Defendant Nakata violated the MDOC's Policy Directives and Operating Procedures as well as a standing order that requires that inmates with any kind of neurological condition such as dizziness, blurred vision, or loss of consciousness be seen immediately by healthcare staff. (*Id*.)

"In evaluating a deliberate indifference claim, '[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Westlake*, 537 F.2d at 860 n.5 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). "When a prisoner grounds a constitutional violation on inadequate medical treatment, his claim is viable only if he shows that the treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Burton v. Kakani*, 514 F. App'x 577, 579 (6th Cir. 2013) (quoting *Alspaugh,* 643 F.3d at 169). Ultimately, the court must consider the wide discretion allowed to prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860.

Here, despite Plaintiff's allegation, Defendant Nakata's response to Plaintiff's Health Care Request does not constitute a complete denial of medical care, and it directly counters any allegation by Plaintiff that Defendant Nakata knew of and disregarded any substantial risk of serious harm to Plaintiff. Plaintiff's only complaint in his Health Care Request was that on the

day prior, he "suddenly blacked out unconscious and when [he] came to [he] didn't know where [he] was or what happened;" Plaintiff did not complain of any residual injuries or symptoms in his Health Care Request. On this basis, Defendant Nakata reasonably perceived that Plaintiff "did not sustain any injuries," and she invited Plaintiff to submit another Health Care Request that included a description of his symptoms, which demonstrates a willingness to provide Plaintiff with any necessary medical treatment. Notably, Plaintiff does not allege, and there is no evidence, that Plaintiff followed Defendant Nakata's instructions to submit another Health Care Request; instead, Plaintiff filed a grievance.[1] Essentially, Plaintiff disagrees with Defendant Nakata's medical judgment. And, as stated above, a difference in judgment between an inmate and prison medical personnel regarding what constitutes appropriate medical treatment does not give rise to a constitutional violation. *See Westlake*, 537 F.2d at 860 n.5.

To the extent that Plaintiff alleges that Defendant Nakata violated an MDOC Policy Directive or Operating Procedure, he fails to identify any such policy or procedure with any specificity. And with regard to Defendant Nakata's alleged violation of a standing order that an inmate who is experiencing a neurological problem be seen by healthcare staff immediately, Plaintiff has not provided any evidence to suggest that such a violation amounts to more than mere negligence. *See Jerauld ex rel. Robinson v. Carl*, 405 F. App'x 970, 976 (6th Cir. 2010) (citation omitted) ("Deliberate indifference requires a degree of culpability greater than mere negligence."). Plaintiff has failed to show that Defendant Nakata acted unconstitutionally, and where there is no constitutional violation, "the plaintiff's § 1983 claim fails as a matter of law

---

[1] In any event, the medical records submitted by the MDOC Defendants in support of the instant Motion indicate that Plaintiff did receive treatment for his neurologic complaints related to his August 31, 2013 loss of consciousness. (Docket no. 29-4 at 13.) According to the records, Plaintiff had an appointment with Mark V. Butler, RN, on September 9, 2013, who (1) noted that Plaintiff had a history of seizures and was on anti-seizure medication; (2) found that Plaintiff's vital signs were stable and that Plaintiff had no physical complaints; (3) assessed that Plaintiff's loss of consciousness was due to a possible seizure; and (4) instructed Plaintiff to report any further loss of consciousness or seizure activity. (*Id*.)

11

and the defendant is therefore entitled to summary judgment and does not need qualified immunity." *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007). Accordingly, the MDOC Defendants' Motion for Summary Judgment should be granted with regard to Defendant Nakata.

### b. Defendants VanSteenkiste, Rupe, and Kinder

With regard to Defendants Nurse Supervisor Kelly VanSteenkiste, Health Unit Manager Kimberly Rupe, and Clinical Administrative Assistant Laura Kinder, Plaintiff makes substantially similar, if not identical, allegations against them in his Complaint. Specifically, Plaintiff alleges that they "knew of Plaintiff's medical condition, knew that the condition required the care of medical staff, knew that Plaintiff was denied medical care for this condition and that it still existed," and yet they failed to provide any medical care and failed to "prevent or remedy that harm." (*See* docket no. 1 at 14-16, 19, 20-21.) Plaintiff also alleges that they "did not adequately supervise the subordinates who violated Plaintiff's rights," they abandoned the duties of their positions, and they "had a job to do, and [] did not do it." Additionally, Plaintiff alleges that during his September 19, 2013 meeting with Defendant VanSteenkiste regarding his Step I grievance, she told him that she would schedule a doctor's appointment for him regarding his neurological problem, but he never received that appointment. (Docket no. 1 at 9-10.)

To state a claim for monetary damages under section 1983, a prisoner plaintiff must allege some specific personal wrongdoing on the part of each individual defendant. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). Claims of supervisory liability will suffice only if the plaintiff alleges and shows that the supervisor personally engaged in or otherwise "authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869,

874 (6th Cir. 1982)). Moreover, it is well established that a defendant is not liable under 42 U.S.C. § 1983 if his or her only involvement in the constitutional violation involved the denial of an administrative grievance or failure to act. *Id.*

Here, Plaintiff has not alleged that Defendants VanSteenkiste, Rupe, or Kinder were personally involved in the administration of Plaintiff's medical care. In fact, Plaintiff's factual allegations make clear that Defendants VanSteenkiste, Rupe, and Kinder's only involvement in this matter was related to the investigation and resolution of Plaintiff's grievance. What is more, each of Plaintiff's claims against Defendants VanSteenkiste, Rupe, and Kinder are predicated on either a failure to act or supervisory liability. Under *Shehee*, Plaintiff's claims against Defendants Vansteenkiste, Rupe, and Kinder do not form the basis for section 1983 liability. Accordingly, the MDOC Defemdants' Motion for Summary Judgment should be granted with respect to Defendants VanSteenkiste, Rupe, and Kinder.

## 2. *Defendant Corizon's Motion for Judgment on the Pleadings*

Defendant Corizon asserts that Plaintiff's Complaint against Defendant Corizon should be dismissed because Plaintiff's allegations fail to state a claim as a matter of law. (Docket no. 30.) To establish § 1983 liability against a corporation, whether public or private, a plaintiff must show that the defendant implemented a policy, custom, or practice that caused a deprivation of the Plaintiff's Eighth Amendment rights. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996)); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir.1993) (a plaintiff must identify the policy, connect the policy to the defendant, and show that the particular injury was caused because of the execution of that policy). Thus, to support his claim, Plaintiff must show that his Eighth Amendment rights were violated and that the violation was caused by Defendant

13

Corizon's policy, custom, or practice. *See Hullett v. Smiedendorf*, 52 F.Supp.2d 817, 828 (W.D. Mich. 1999).

In addition to Plaintiff's general allegations of deliberate indifference and failure to administer medical care against Defendant Corizon, *supra*, Plaintiff alleges that Defendant Corizon's "customs, policies, and practices is [sic] to ignore and minimize prisoners healthcare needs and thereby refusing [sic] to provide the adequate medical care that is required by law and policy." (Docket no. 1 at 17.) Plaintiff also alleges that Defendant Corizon "failed to properly train its employee." (*Id*. at 2.) Defendant Corizon argues that Plaintiff's "policy" allegations are conclusory, and they fail to sufficiently identify any policy, practice, or procedure of Defendant Corizon that violated Plaintiff's Eighth Amendment rights. (Docket no. 30 at 12.) Defendant Corizon further argues that in the absence of specific policy allegations, it is clear that Plaintiff is seeking to hold Defendant Corizon vicariously liable for alleged constitutional violations on the basis of *respondeat superior*, which is improper – especially where the individual defendants are not Corizon employees. (*Id*. at 12-13.)

Defendant Corizon's arguments hold merit. Plaintiff has failed to identify any policy, custom, or practice that has been implemented, followed, or enforced by Defendant Corizon that directs its employees to ignore or minimize the healthcare needs of prisoners or otherwise refuse to provide them with medical care. Notably, Plaintiff pleads absolutely no factual detail regarding the alleged unconstitutional policy, what the alleged policy mandated or prohibited, what the alleged policy applied to, who allegedly executed the alleged policy, or how the alleged policy was executed relative to Plaintiff. At most, Plaintiff's allegations against Defendant Corizon are threadbare recitals of law or vague conclusory allegations. (*See* docket no. 1 at 2, 17, 19-20, 21.) As Defendant Corizon asserts, it appears that Plaintiff's claims against Corizon

14

are based heavily on his assumption that Corizon should be held vicariously liable for the actions of Defendants Nakata, Vansteenkiste, Rupe, and Kinder. (*See id.*) But such a theory is insufficient to state a claim against Defendant Corizon where (1) a private entity employed by the state cannot be held liable on a theory of *respondeat superior*, *see Starcher*, 7 F. App'x at 465; and (2) Defendants Nakata, Vansteenkiste, Rupe, and Kinder were, at all relevant times, not employed by Corizon (*see* docket no. 29). Accordingly, Defendant Corizon Health, Inc.'s Motion for Judgment on the Pleadings (docket no. 30) should be granted.

### 3. *Plaintiff's Claims against Defendant Ladd*

In a July 30, 2015 letter, in response to a Notice of a Lawsuit and Request to Waive Service of a Summons, the MDOC informed the United States Marshals Service that it is not authorized to accept service on behalf of Defendant Ladd, as he is deceased. This letter was filed with the court on August 3, 2015. (Docket no. 8.) A court may order a substitution of parties due to death "[i]f a party dies and the claim is not extinguished." Fed. R. Civ. P. 25(a)(1). If no motion for substitution is made within 90 days after a party's death is first suggested on the record, "the action by or against the decedent *must be dismissed*." *Id.* (emphasis added). Defendant Ladd's death was first suggested on the record on August 3, 2015, and the period to file a motion for substitution lapsed in November of 2015 without any such filing by Plaintiff or another party. Therefore, Plaintiff's claims against Defendant Ladd should be dismissed under Rule 25(a).[2]

### 4. *Plaintiff's Claims against Defendant Riley*

Defendant Willie Riley accepted service of Plaintiff's Complaint on September 30, 2015 (*see* docket no. 31), but he has not filed an appearance, a responsive pleading, or a dispositive

---

[2] Plaintiff's claims against Defendant Ladd should also be dismissed because he has not provided any evidence to suggest that Defendant Ladd's alleged policy violation amounts to more than mere negligence. *See Jerauld ex rel. Robinson*, 405 F. App'x at 976.

15

motion in this matter.[3] Nevertheless, Plaintiff's claims against Defendant Riley should be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915, which provides that a district court has a duty to dismiss at any time a case in which the plaintiff is proceeding *in forma pauperis* if it determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted.[4] 28 U.S.C. § 1915(e)(2)(B). To state a plausible claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that each defendant was personally involved in the alleged constitutional violation. *Copeland,* 57 F.3d at 481. It is a well-established principle that § 1983 liability cannot be based on a mere failure to act or on a theory of *respondeat superior*. *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998). Rather, a supervisor must have "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Shehee,* 199 F.3d at 300 (citation omitted).

Here, Plaintiff asserts that Defendant Riley was employed as the Deputy Warden at the Cooper Street Correctional Facility. (Docket no. 1 at 5.) Plaintiff alleges that during an interview related to his Step I grievance, Defendant VanSteenkiste told Plaintiff that the healthcare and corrections staff did not follow proper operating procedures in dealing with his medical complaint, and she said that she would inform Defendant Riley of the situation and have him get with the correction staff involved. (*Id*. at 9.) Plaintiff claims that Defendant Riley was deliberately indifferent to Plaintiff's medical, health, and safety needs because Defendant Riley "failed to establish a policy or [] implement a procedure that would prevent the denial of

---

[3] Pursuant to 42 U.S.C. § 1997e(g), a defendant may waive the right to reply to an action brought by a prisoner under 42 U.S.C. § 1983, without such waiver constituting an admission of the allegations contained in the complaint. 42 U.S.C. § 1997e(g)(1).

[4] The court granted Plaintiff's application to proceed *in forma pauperis* on June 3, 2015. (Docket no. 3.)

adequate medical care to [] Plaintiff." (*Id*. at 17.) Plaintiff also claims that once Defendant Riley was aware that adequate medical care had not been provided to Plaintiff, Defendant Riley had a duty to insure that Plaintiff was provided with adequate medical care and that Plaintiff's constitutional rights were not violated, and Defendant Riley failed to meet that duty. (*Id*. at 17-18.) Plaintiff further claims that Defendant Riley "abandoned the specific duties of his position in not properly training his officers in the policy and procedures in dealing with a prisoner's medical needs." (*Id*. at 18.) Finally, Plaintiff avers that Defendant Riley "personally had a job to do and he did not perform it." (*Id*.)

Essentially, Plaintiff has sued Defendant Riley based upon his position of authority and supervisory responsibility within the MDOC, and each of Plaintiff's claims against Defendant Riley are based on some failure to act. As stated above, section 1983 liability cannot attach on this basis. *See Salehpour, supra.* Moreover, Plaintiff has not alleged that Defendant Riley directly participated in, encouraged, implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct surrounding Plaintiff's medical care. Plaintiff has not alleged a constitutional wrongdoing committed by Defendant Riley, and where there is no constitutional violation, "the plaintiff's § 1983 claim fails as a matter of law. . . ." *Marvin,* 509 F.3d at 244. Accordingly, Plaintiff's claims against Defendant Riley should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 5. *Plaintiff's Claims against Unknown Defendants 1-10*

On July 27, 2015, the court, having determined that Plaintiff may proceed *in forma pauperis*, directed the U.S. Marshals Service to serve the appropriate papers in this case without prepayment of the costs for such service. (Docket no. 6.) Plaintiff, however, did not provide the court with identifying information or addresses for any of the unnamed defendants. Thus, on

17

April 12, 2016, the Court entered an Order directing Plaintiff to show cause by May 6, 2016 why "defendants John Does (1-10) should not be dismissed for failure to comply with Fed. R. Civ. P. 4(m)." (Docket no. 39.) Plaintiff did not respond to the Order to Show Cause.

The time for service of the summons and complaint is established under Federal Rule of Civil Procedure 4(m), which provides that service must be made within 120 days after the filing of the complaint.[5] "If a defendant is not served within 120 days after the complaint is filed, the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Service has not been effected on Unknown Defendants 1-10 within the time allotted under Rule 4(m). To date, Plaintiff has not responded to the Court's Order to Show Cause, requested an extension of time to identify the unnamed defendants, or shown good cause to further extend the time for service. Accordingly, it is recommended that Plaintiff's claims against Unknown Defendants 1-10 be dismissed for failure to comply with Federal Rule of Civil Procedure 4(m).

### D. Conclusion

For the reasons stated herein, it is recommended that the court (1) **GRANT** MDOC Defendants Jodi Nakata, Kelly VanSteenkiste, Kim Rupe, and Laura Kinder's Motion for Summary Judgment (docket no. 29); (2) **GRANT** Defendant Corizon's Motion for Judgment on the Pleadings (docket no. 30); (3) dismiss Defendant Ladd from this action pursuant to Federal Rule of Civil Procedure 25(a); (4) dismiss Defendant Riley from this action pursuant to 28 U.S.C. § 1915; and (5) dismiss Unknown Defendants 1-10 from this action pursuant to Federal

---

[5] All citations to Federal Rule of Civil Procedure 4(m) in this document are to the text of the Rule in effect at the time that the Complaint was filed. Rule 4(m) has since been amended, effective December 1, 2015, to allow only 90 days for service.

Rule of Civil Procedure 4(m). Accordingly, it is recommended that the court dismiss this matter in its entirety.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: July 12, 2016        s/ Mona K. Majzoub
                            MONA K. MAJZOUB
                            UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  July12, 2016         s/ Lisa C. Bartlett
                                       Case Manager